**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| CYBERDOOR SYSTEMS, PTY. LTD., an Australian proprietary limited company, and AUTOSLIDE, PTY. LTD., an Australian proprietary limited company,<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH J. CASTONGUAY, an individual, and SMART ACCESS LABS LLC, a Florida Limited Liability Company,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs Cyberdoor Systems Pty., Ltd., an Australian Proprietary Limited Company ("Cyberdoor") and Autoslide Pty. Ltd., an Australian Proprietary Limited Company ("Autoslide") (collectively, "Plaintiffs"), bring this action against Defendants Joseph J. Castonguay ("Castonguay") and Smart Access Labs LLC ("Smart Access") (collectively, "Defendants"), for Trademark Infringement (Counts I-II), Federal Unfair Competition (Counts III-IV), Cybersquatting (Counts V-VI), False Advertising under Fla. Stat. §817.41 (Counts VII-VIII), Florida Deceptive and Unfair Trade Practices Act (Counts IX-X), and Common Law Unfair Competition (XI-XII). In support of this Complaint, Plaintiffs state as follows.

## PARTIES

1. Cyberdoor is an Australian Proprietary Limited Company based in Sydney, New South Wales, that specializes in automatic door installation, service, maintenance, and supplies.

2. Cyberdoor also owns the trademarks at issue and as more fully averred and discussed below.

3. Autoslide is an Australian Proprietary Limited Company that is based in Sydney, New South Wales, and designs and manufactures automatic door and window systems for homes, offices, restaurants, boats, and motor coaches.

4. Autoslide is sole owner of Cyberdoor and previously transferred its rights to the trademarks at issue to Cyberdoor through written assignments.

5. On information and belief, Castonguay is an adult individual residing at 12009 Hope Lane, Tampa, Florida 33618.

6. On information and belief, Smart Access is a Limited Liability Company organized and existing under the laws of Florida and having a principal place of business at 12009 Hope Lane, Tampa, Florida 33618.

7. On information and belief, Smart Access conducts its business operations, in part, at 8507 Benjamin Road, Suite G, Tampa, Florida 33634, by and through Castonguay.

8. On information and belief, Castonguay is the Authorized Member and Registered Agent of Smart Access.

9. On information and belief, at all times pertinent hereto, Castonguay was and is an apparent, ostensible, or actual agent, employee, or servant of Smart Access, and/or the sole member, managing member, officer, director, or other member of Smart Access, and/or an individual who possesses an ownership or membership interest in Smart Access.

## JURISDICTION AND VENUE

10. This is an action for trademark infringement, unfair competition, cybersquatting, false advertising, and under the Florida Deceptive and Unfair Trade Practices Act.

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 for an action arising under the Lanham Act 15 U.S.C. §1051 *et seq*.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the remaining claims in this Complaint because they are so related to the Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative facts.

13. This Court has personal jurisdiction over Smart Access because it is incorporated and headquartered in Florida, regularly and routinely conducts continuous and systematic business in Florida, has sufficient minimum contacts with

Florida, and because it advertises markets and solicits business in Florida, either on its own or through Castonguay.

14. This Court has personal jurisdiction over Castonguay because he resides in Florida, regularly and routinely conducts continuous and systematic business in Florida, has sufficient minimum contacts with Florida, and because he advertises markets and solicits business in Florida, either on his own or through Smart Access.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the Defendants have conducted business in this judicial district by offering and selling their goods and services in Tampa, Florida, advertising their goods and services for sale in Tampa, Florida through their web domain https://www.shopautoslide.com.

16. Venue is also appropriate within this judicial district as a substantial portion of the conduct of the Defendants that is the subject of this action occurred, and is continuing to occur, within this judicial district.

## **FACTS**

17. Mark Hancock ("Hancock") is an owner of Autoslide.

18. Hancock is also an owner of Autoslide LLC, is a Limited Liability Company organized and existing under the laws of the state of California and

conducting business operations, among other places, at 8507 Benjamin Road, Suite G, Tampa, Florida 33634 (hereinafter "California Autoslide").

19. California Autoslide conducted business in Florida as Autoslide FL, LLC.

20. California Autoslide was the authorized and exclusive distributor of products manufactured by Autoslide within the United States from about June 2017 until about September 2026.

21. During that time frame, California Autoslide continuously used the AUTOSLIDE mark and tradename in commerce and in connection with the marketing and advertisement of Autoslide's products.

22. Throughout the years, California Autoslide made a substantial investment in advertising and promoting its products and related services to the public under the AUTOSLIDE mark and tradename.

23. The AUTOSLIDE mark, tradename, and design are protected by the following U.S. Trademark Registrations (hereinafter the "AUTOSLIDE Marks"):

> * U.S. Trademark No. 4,270,632 for AUTOSLIDE for "Electric door openers and closers; electric sliding door mechanisms, namely, door openers; Electronic control apparatus for remote control of opening and closing doors; Parts for electric door openers, namely, electrically operated drive units for opening and closing doors comprised of a motor, sensor, and battery pack; Electric sensors for use with doors" in Class 009;

* U.S. Trademark No. 4,420,477 for AUTOSLIDE (and Design) for "Electric door openers and closers; electric sliding door mechanisms, namely, door openers; Electronic control apparatus for remote control of opening and closing doors; Parts for electric door openers, namely, electrically operated drive units for opening and closing doors comprised of a motor, sensor, and battery pack; Electric sensors for use with doors" in Class 009.

24. A true and correct copy of U.S. Trademark Registration No. 4,270,632 is attached hereto as **Exhibit A**.

25. A true and correct copy of U.S. Trademark Registration No. 4,420,477 is attached hereto as **Exhibit B**.

26. The AUTOSLIDE Marks were originally owned by Autoslide LLC, a Delaware Limited Liability Company (hereinafter "Delaware Autoslide").

27. By an assignment instrument dated July 15, 2024, Delaware Autoslide assigned the AUTOSLIDE Marks to Autoslide. The assignment instrument was recorded at the U.S. Patent and Trademark Office (hereinafter "USPTO") on July 17, 2024, at Reel 8514, Frame 0344.

28. A true and correct copy of the assignment from Delaware Autoslide to Autoslide and its recordation with the USPTO is attached hereto as **Exhibit C**.

29. Thereafter, by way of an assignment instrument dated May 11, 2026, Autoslide transferred the AUTOSLIDE Marks to Cyberdoor, which currently is the sole owner of the AUTOSLIDE Marks. The assignment instrument was recorded at the USPTO on June 16, 2026, at Reel 9309, Frame 0450.

30. A true and correct copy of the assignment from Autoslide to Cyberdoor and its recordation with the USPTO is attached hereto as **Exhibit D**.

31. At all relevant times, the AUOTSLIDE marks were used under license from Delaware Autoslide, Autoslide, or Cyberdoor.

32. Castonguay is the President of California Autoslide.

33. During his employment as President of California Autoslide Castonguay conducted business at 8507 Benjamin Road, Suite G, Tampa, Florida 33634.

34. In September 2026, Autoslide made arrangements for Autoslide USA, LLC ("Autoslide USA") to replace California Autoslide as the sole authorized and exclusive distributor of Autoslide's products within the United States.

35. By email dated September 5, 2026, Hancock, on behalf of Autoslide, informed Castonguay that Autoslide terminated its distribution relationship with California Autoslide and instructed Castonguay that Autoslide USA would replace California Autoslide as the sole authorized and exclusive distributor of Autoslide's products in the United States, beginning in October 2026.

36. Consequently, California Autoslide was the entity authorized to distribute Autoslide's products up until October 2026, and now Autoslide USA is the entity authorized to distribute Autoslide's products.

37. Consequently, California Autoslide no longer has any authority to distribute, market, or otherwise sell Autoslide's products.

38. Shortly thereafter, Castonguay purportedly acting on behalf of D.H. Pace Company, Inc. d/b/a Overhead Door Company of Tampa Bay ("Overhead Door Company"), erroneously created the impression that he was an agent or employee of Overhead Door Company or otherwise affiliated with Overhead Door Company.

39. On or about September 2026, Castonguay created the website www.shopautoslide.com (the "Webpage" and the "Infringing Domain") and linked it to Autoslide's website, https://autoslide.com/.

40. On the Webpage, Castonguay falsely represented that Overhead Door Company had partnered with Autoslide and mispresented that Overhead Door Company possessed the authority to distribute, market, and sell Autoslide products in the United States.

41. In creating the Webpage, Castonguay, while purporting to act on behalf of Overhead Door Company, infringed the AUTOSLIDE Marks, and used them in a deceptive and misleading manner in four discrete ways.

42. First, on the Webpage, the AUTOSLIDE Mark appears in the top left-hand corner to create the appearance and erroneous impression that the AUTOSLIDE trademark is the trademark of Overhead Door Company. A true and

correct snapshot of this image on the Webpage, as marked up and highlighted, is attached hereto as **Exhibit E**.

43. Second, on the front page of the Webpage, Castonguay falsely asserts that "Overhead Door Company of Tampa Bay has partnered with Autoslide Pty to bring their revolutionary product to the USA market." A true and correct snapshot of this image on the Webpage, as marked up and highlighted, is attached hereto as **Exhibit F**.

44. Third, on the front page of the Webpage, the link on the phrase "About Us" redirects the viewer to Autoslide's website page https://autoslide.com/about-us/, thereby creating the erroneous impression that Overhead Door Company was affiliated or partnered with Autoslide and/or is otherwise indistinguishable from Autoslide. A true and correct snapshot of the "About Us" page of Autoslide is attached hereto as **Exhibit G**.

45. Fourth, the email address listed on the "Contact Us" page of the Webpage, (i.e., https://www.shopautoslide.com/pages/contact-us), is info@autoslide.com, which is the same exact email address that Autoslide uses and displays on its own actual webpage to receive inquiries from the public. A true and correct snapshot of this image on the Webpage, as marked up and highlighted, is attached hereto as **Exhibit H**.

46. At all times pertinent to the Webpage, Castonguay purported to act on behalf of Overhead Door Company, but Autoslide does not believe that Castonguay was ever employed or otherwise affiliated with Overhead Door Company.

47. Nonetheless, Overhead Door Company and Autoslide are direct business competitors in the Tampa Bay area because both companies specialize in distributing, marketing, and selling automatic door systems to the public.

48. On September 11, 2026, counsel for Cyberdoor sent a demand letter to Castonguay and Overhead Door Company, demanding that they remove the AUTOSLIDE Marks from the Webpage within one week ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit I**.

49. On or about September 17, 2026, Castonguay revised the Webpage at https://www.shopautoslide.com/pages/about-us to delete reference to Overhead Door Company and the AUTOSLIDE Marks ("Revised Webpage").

50. In the time period following the Demand Letter to and including September 17, 2026, Castonguay became employed by, or otherwise affiliated with, Defendant Smart Access, as averred above, and then utilized his above-mentioned personal address to conduct business activity on behalf of and for Smart Access.

51. At all times pertinent to the Revised Webpage, Castonguay was acting as an officer, employee, agent, and/or servant of Smart Access and possessed actual, apparent, or ostensible authority to act on behalf of Smart Access.

52. On the Revised Webpage, Mr. Castonguay included the logo and name for Smart Access in the upper left-hand corner and infringed the AUTOSLIDE Marks and name, by falsely representing that Smart Access owns Autoslide and is currently redesigning and enhancing Autoslide's products to sell to the public, stating, in pertinent part, as follows:

> **<u>About Us</u>**
>
> *Autoslide is a Smart Access company*. We design and manufacture automatic door and window systems, along with … technology that works alongside them while giving people a smarter, more convenient way to move through their homes and businesses.
>
> *We're an independent North American company, separate from the Autoslide entity in Australia*. Our team brings more hands-on experience in automatic door and window automation than anyone else in North America, and we're putting that experience into a new generation of Smart Access products.
>
> Every product we bring to market goes through rigorous design, testing, and quality control before it reaches your door. *We're not just updating what came before...we're rebuilding it the right way, so you get automation you can trust for the long run*.

A true and correct snapshot of the Revised Webpage is attached hereto as **<u>Exhibit J</u>** (emphasis added).

53. In addition, on the Revised Webpage, Castonguay altered the "Contact Us" page (i.e., https://www.shopautoslide.com/pages/contact-us) to include the Smart Access name and logo in the upper left-hand corner and infringed the

AUTOSLIDE Marks, by expressly listing Autoslide as the company that the viewer may contact.

54. In a deceiving manner, Castonguay is using the info@shopautoslide.com email address on the Revised Webpage, in an apparent attempt to divert Autoslide's business opportunities to himself and/or Smart Access. A true and correct snapshot of the Webpage is attached hereto as **Exhibit K**. On information and belief, Castonguay is using the info@shopautoslide.com email address to this day.

55. On September 18, 2026, an individual stating that he was counsel for "Autoslide LLC" responded to the Demand Letter and expressed confusion over the matter and questioning whether Cyberdoor owns the AUTOSLIDE Marks and stating that Autoslide LLC is not affiliated with Overhead Door Company. A true and correct copy of the response to the Demand Letter is attached hereto as **Exhibit L**.

56. Smart Access and Autoslide are business competitors in the Tampa Bay area because both companies specialize in designing, distributing, marketing and selling automatic door systems to the public.

57. To date, Defendants have not removed the Revised Webpage and continue to infringe the Autoslide Marks by misrepresenting to the public that Smart Access owns Autoslide and that the viewer can contact Autoslide via Castonguay or

Smart Access' email address at info@shopautoslide.com. To date, Defendants are also continuing to use the Infringing Domain.

**COUNT I**
**Trademark Infringement, 15 U.S.C. § 1114**
**(Cyberdoor and Autoslide v. Castonguay)**

58. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

59. The AUTOSLIDE Marks are well-known to the public, distinctive, fully valid, legally subsisting, and enforced to prevent public confusion over the source of Autoslide's goods and services.

60. Autoslide has widely advertised Autoslide's products for sale under the AUTOSLIDE Marks and the AUTOSLIDE Marks have become, through widespread and favorable public acceptance and recognition, assets of substantial value and as a symbol of Autoslide, the quality of Autoslide's products, and Autoslide's goodwill and business reputation.

61. The quality of Autoslide's goods and services have become associated with the AUTOSLIDE Marks; consequently, the relevant public and trade have come to know and recognize the AUTOSLIDE Marks as being associated with Autoslide and its products.

62. Through the quality of its products and advertising campaigns, Autoslide has built extensive goodwill in the AUTOSLIDE Marks and this goodwill is of significant value to Autoslide.

63. In September 2026, Castonguay, purporting to act on behalf of Overhead Door Company, and erroneously creating the impression that he was employed or otherwise affiliated with Overhead Door Company, began using the AUTOSLIDE Marks on the Webpage.

64. In creating the Webpage, Castonguay misappropriated the AUTOSLIDE Marks despite his express acknowledgement that the AUTOSLIDE Marks were registered trademarks with the USPTO.

65. Although in the Webpage Castonguay claims that Overhead Door Company has partnered with Autoslide to distribute its products in the United States, Castonguay and Overhead Door Company are not authorized or licensed by Autoslide or Cyberdoor to offer, advertise, market, or sell Autoslide's products in connection with the AUTOSLIDE Marks or name.

66. Castonguay's use of the AUTOSLIDE Marks on the Webpage is likely to cause confusion with Cyberdoor's registered trademarks regarding the source or origin of Overhead Door Company's goods and services and as to its affiliation or purported partnership with Autoslide and/or Cyberdoor.

67. Castonguay's use of the AUTOSLIDE Marks on the Webpage is likely to confuse or deceive relevant members of the public and trade into mistakenly believing that Overhead Door Company is affiliated, associated, or partnered with Autoslide, or that Autoslide licensed Castonguay and/or Overhead Door Company to use the AUTOSLIDE Marks and sell Autoslide's products to the public.

68. By using the AUTOSLIDE Marks on the Webpage, and offering Autoslide's products for sale under the AUTOSLIDE Marks, Castonguay misrepresented and falsely described to the general public the origin and source of Overhead Door Company's goods or services so as to deceive the public and deliberately create the likelihood of confusion, or to cause mistake, or to deceive as to the affiliation, partnership, or association of Overhead Door Company and Autoslide.

69. With full knowledge of the favorable reputation of the AUTOSLIDE Marks, Castonguay knowingly and unlawfully exploited the goodwill associated with the AUTOSLIDE Marks and has misled—and will continue to confuse and mislead—the public into mistakenly assuming that there is a partnership agreement between Autoslide and Overhead Door Company whereby Overhead Door Company and/or Castonguay are licensed to sell Autoslide's products to the public.

70. Consequently, members of the relevant public and trade, upon seeing Castonguay's use of the AUTOSLIDE Marks, are likely to assume and will continue

to assume (albeit incorrectly) that Castonguay and/or Overhead Door Company possess legal authority to offer and sell Autoslide's products, when such is not the case.

71. Castonguay's utilization of the AUTOSLIDE Marks on the Webpage constitutes a knowingly false designation of origin and misrepresentation that wrongly and falsely designates Overhead Door Company's goods or services as originating from or otherwise connected or associated with Autoslide's products and constitutes unfair competition in commerce.

72. Castonguay's imitation, reproduction, and unauthorized use of the Autoslide Marks on the Webpage is causing and is likely to continue to cause irreparable injury to Autoslide and/or Cyberdoor, including injury to their business reputations and dilution of the distinctive quality of the AUTOSLIDE Marks.

73. Castonguay's use of the AUTOSLIDE Marks and offer to sell Autoslide's products to the public through a purported partnership constitute knowing and willful misrepresentations that unlawfully exploit the commercial value and goodwill that Autoslide has developed in the AUTOSLIDE Marks, and is likely to cause confusion, mistake, or deceive the public with respect to Overhead Door Company's affiliation, association, or partnership with Autoslide or Overhead Door Company's authority to distribute, offer, and sell Autoslide's products to the public, when no such affiliation, association, or partnership exists neither Overhead

Door Company nor Castonguay have the legal authority to distribute, offer, and sell Autoslide's products to the public.

74. In creating the Webpage and utilizing the AUTOSLIDE Marks, Castonguay counterfeited and identically reproduced the names, marks, designs in and of the AUTOSLIDE Marks, and he did so knowingly and intentionally and with the intent to deceive the public into believing that it could purchase Autoslide's products from Overhead Door Company and/or Castonguay when the public could not as a matter of fact make such purchases.

75. As a result of Mr. Castonguay's conduct in infringing the AUTOSLIDE Marks, Plaintiffs, as the lawful owners of the AUTOSLIDE Marks, have suffered irreparable harm and damage and have no adequate or complete remedy at law.

76. As a direct and proximate result of Castonguay's unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Castonguay from using the AUTOSLIDE Marks and name in accordance with 15 U.S.C. § 1116, and to recover all damages Plaintiffs have sustained as a result of Castonguay's infringing acts in an amount not yet known, all gains, profits, and advantages obtained by Castonguay as a result of his infringing acts, enhanced damages and profits, as well as reasonable attorney's fees and the costs of this action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), or statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark under 15 U.S.C. §

1117(c)(1) or up to $2,000,000 for willful use of a counterfeit mark under 15 U.S.C. § 1117(c)(1), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Castonguay and to award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**Trademark Infringement, 15 U.S.C. § 1114**
**(Cyberdoor and Autoslide v. Castonguay and Smart Access)**

77. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

78. The AUTOSLIDE Marks are well-known to the public, distinctive, fully valid, legally subsisting, and enforced to prevent public confusion over the source of Autoslide's goods and services and the infringing use by competitors.

79. Autoslide has widely advertised Autoslide's products for sale under the AUTOSLIDE Marks and the AUTOSLIDE Marks have become, through widespread and favorable public acceptance and recognition, assets of substantial value and as a symbol of Autoslide and the quality of Autoslide's products, and Autoslide's goodwill and business reputation.

80. The quality of Autoslide's goods and services has become associated with the AUTOSLIDE Marks; consequently, the relevant public and trade have come to know and recognize the AUTOSLIDE Marks as being associated with Autoslide and its products.

81. Through the quality of its products and advertising campaigns, Autoslide has built extensive goodwill in the AUTOSLIDE Marks and this goodwill is of significant value to Autoslide.

82. In or about September 2026, Defendant Castonguay, acting on behalf of and for Defendant Smart Access, began using the AUTOSLIDE Marks on the Revised Webpage.

83. In creating the Revised Webpage, Defendants misappropriated the AUTOSLIDE Marks despite Defendant Mr. Castonguay's express knowledge that the AUTOSLIDE Marks were registered trademarks with the USPTO.

84. Although the Revised Webpage purports to claim that Smart Access owns Autoslide and has obtained rights to redesign Autoslide's products and sell them to the public, Defendants do not own Autoslide, are not affiliated with Autoslide, and are not authorized or licensed by Autoslide or Cyberdoor to offer, advertise, market, or sell Autoslide's products in connection with the AUTOSLIDE Marks or name.

85. Defendants' use of the AUTOSLIDE Marks on the Revised Webpage are likely to cause confusion with Cyberdoor's registered trademarks regarding the source or origin of Defendants' goods and services and as to Defendants' ownership of or purported partnership with Autoslide and/or Cyberdoor.

86. Defendants' use of the AUTOSLIDE Marks on the Revised Webpage is likely to confuse or deceive relevant members of the public and trade into mistakenly believing that Defendants own or otherwise affiliated with Autoslide, or that Autoslide licensed Defendants to use the AUTOSLIDE Marks and sell Autoslide's products to the public.

87. By using the AUTOSLIDE Marks on the Revised Webpage, and offering Autoslide's products for sale under the AUTOSLIDE Marks, Defendants have misrepresented and falsely described to the general public the origin and source of Defendants' goods or services so as to deceive the public and deliberately create the likelihood of confusion, or to cause mistake, or to deceive as to the ownership, affiliation, or association between Defendants and Autoslide.

88. With full knowledge of the favorable reputation of the AUTOSLIDE Marks, Defendants knowingly and unlawfully exploited the goodwill associated with the AUTOSLIDE Marks and have misled—and will continue to confuse and mislead—the public into mistakenly assuming that Defendants own Autoslide, are

authorized to redesign its products, and are licensed to sell Autoslide's products to the public.

89. Consequently, members of the relevant public and trade, upon seeing Defendants' use of the AUTOSLIDE Marks, are likely to assume and will continue to assume (albeit incorrectly) that Defendants own Autoslide as a business entity and possess legal authority to redesign and sell Autoslide's products, when such is not the case.

90. Defendants' utilization of the AUTOSLIDE Marks on the Revised Webpage constitutes a knowingly false designation of origin and misrepresentation that wrongly and falsely designates Defendants' goods or services as originating from or otherwise connected or associated with Autoslide's products and constitutes unfair competition in commerce.

91. Defendants' imitation, reproduction, and unauthorized use of the Autoslide Marks on the Revised Webpage is causing and is likely to continue to cause irreparable injury to Autoslide and/or Cyberdoor, including injury to their business reputations and dilution of the distinctive quality of the AUTOSLIDE Marks.

92. Defendants' use of the AUTOSLIDE Marks and offer to sell Autoslide's products to the public through their purported ownership of Autoslide constitutes knowing and willful misrepresentations that unlawfully exploit the

commercial value and goodwill that Autoslide has developed in the AUTOSLIDE Marks, and is likely to cause confusion, mistake, or deceive the public with respect to Defendants' ownership of Autoslide, authority to redesign Autoslide's products, and authority to offer and sell Autoslide's products to the public, when no such ownership or legal authority exists.

93. In creating the Revised Webpage and utilizing the AUTOSLIDE Marks, Defendants counterfeited and identically reproduced the names, marks, designs in and of the AUTOSLIDE Marks, and Defendants did so knowingly and intentionally and with the intent to deceive the public into believing that it could purchase Autoslide's products from Defendants when the public could not as a matter of fact.

94. As a result of Defendants' conduct in infringing the AUTOSLIDE Marks, Plaintiffs, as the lawful owners of the AUTOSLIDE Marks, have suffered irreparable harm and damages and have no adequate or complete remedy at law.

95. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the AUTOSLIDE Marks and name in accordance with 15 U.S.C. § 1116, and to recover all damages Plaintiffs have sustained as a result of Defendants' infringing acts in an amount not yet known, all gains, profits, and advantages obtained by Defendants as a result of their infringing acts, enhanced damages and profits, as well as reasonable

attorney's fees and the costs of this action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), or statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark under 15 U.S.C. § 1117(c)(1) or up to $2,000,000 for willful use of a counterfeit mark under 15 U.S.C. § 1117(c)(1), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

96. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Mr. Castonguay.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in its favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**Federal Unfair Competition—False Designation of Origin, 15 U.S.C. § 1125(a)**
**(Cyberdoor and Autoslide v. Castonguay)**

97. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

98. As alleged herein, Castonguay's acts and conduct constitute federal unfair competition in the nature of a false designation of origin, which is likely to cause confusion, mistake, or deception with respect to Castonguay and/or Overhead

Door Company's affiliation, partnership, or association with Autoslide and Castonguay and/or Overhead Door Company's authority to distribute, offer, and sell Autoslide's products to the public.

99. Castonguay's commercial advertising or promotion of Autoslide's products to the public on the Webpage with the AUTOSLIDE Marks misrepresents to the public that Castonguay and/or Overhead Door Company are officially licensed or authorized by Autoslide to distribute, offer, and sell the Autoslide products to the public, when such is not the case.

100. Castonguay is passing off Autoslide's products as his own.

101. Castonguay's unlawful use of the AUTOSLIDE Marks exploits the commercial value Autoslide and/or Cyberdoor have developed in the AUTOSLIDE Marks and has caused and will likely continue to cause Plaintiffs substantial and irreparable injury, depriving Plaintiffs of the right to control the use of the AUTOSLIDE Marks and name and to determine the manner in which the AUTOSLIDE Marks and name are represented to the general public.

102. Castonguay's unlawful use of the AUTOSLIDE Marks and name on the Webpage and in connection with the promotion and advertisement of Overhead Door Company was committed willfully, intentionally, and in bad faith and constitutes unfair competition under 15 U.S.C. § 1125(a).

103. As a result of Mr. Castonguay's unfair competition, Plaintiffs, as the lawful owners of the AUTOSLIDE Marks, have suffered irreparable harm and damages and have no adequate or complete remedy at law.

104. As a direct and proximate result of Castonguay's unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Castonguay from using the AUTOSLIDE Mark in accordance with 15 U.S.C. §1116, and to recover all damages that Plaintiffs have sustained and will sustain, and all gains, profits, and advantages obtained by Castonguay as a result of his infringing acts in an amount not yet known, as well as reasonable attorney's fees and the costs of this action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

WHEREFORE, Cyberdoor and Autoslide and request that this Court enter judgment in their favor and against Mr. Castonguay and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## Federal Unfair Competition—False Designation of Origin, 15 U.S.C. § 1125(a)
## (Cyberdoor and Autoslide v. Castonguay and Smart Access)

105. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

106. As alleged herein, Defendants' acts and conduct constitute federal unfair competition in the nature of a false designation of origin, which is likely to cause confusion, mistake, or deception with respect to Defendants' ownership of Autoslide and authority to redesign Autoslide's products and distribute, offer, and sell them to the public.

107. Defendants' commercial advertising or promotion of Autoslide's products to the public on the Revised Webpage with the AUTOSLIDE Marks misrepresents to the public that Defendants own Autoslide and are officially licensed or authorized by Autoslide to redesign their products and distribute, offer, and sell them to the public, when such is not the case.

108. Defendants' unlawful use of the AUTOSLIDE Marks exploits the commercial value Autoslide and/or Cyberdoor have developed in the AUTOSLIDE Marks and has caused and will likely continue to cause Plaintiffs substantial and irreparable injury, depriving Plaintiffs of the right to control the use of the AUTOSLIDE Marks and name and to determine the manner in which the AUTOSLIDE Marks and name are represented to the general public.

109. Defendants' unlawful use of the AUTOSLIDE Marks and name on the Revised Webpage and in connection with the promotion and advertisement of Defendant Smart Access was committed willfully, intentionally, and in bad faith and constitutes unfair competition under 15 U.S.C. § 1125(a).

110. Defendants are passing off Autoslide's products as their own.

111. As a result of Defendants' unfair competition, Plaintiffs, as the lawful owners of the AUTOSLIDE Marks, have suffered irreparable harm and damages and has no adequate or complete remedy at law.

112. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the AUTOSLIDE Mark in accordance with 15 U.S.C. §1116, and to recover all damages that Plaintiffs have sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts in an amount not yet known, as well as reasonable attorney's fees and the costs of this action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

113. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Castonguay.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**
**Cybersquatting, 15 U.S.C. § 1125(d)**
**(Cyberdoor and Autoslide v. Castonguay)**

114. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

115. Defendants registered, trafficked in, or used the Infringing Domain shopautoslide.com.

116. Castonguay acted in bad faith in registering the Infringing Domain, creating the Webpage, and he intended to profit directly by misappropriating and utilizing the Infringing Domain, and in using AUTOSLIDE Marks on the Webpage for the benefit of himself, while erroneously creating the impression that he was acting on behalf of Overhead Door Company.

117. Castonguay created the Webpage, registered the Infringing Domain, and misappropriated the AUTOSLIDE Marks with the intention of diverting Autoslide's customers away from Autoslide and to himself and/or Overhead Door Company.

118. Castonguay did not have permission or license from Autoslide or Cyberdoor to use AUTOSLIDE Marks on the Webpage and Castonguay's utilization of the AUTOSLIDE Marks was not fair use of the marks or in connection with a bona fide and legitimate offering of goods or services.

119. In creating the Webpage and registering the Infringing Domain, Mr. Castonguay seized and linked to the Autoslide website, https://autoslide.com/, for his own commercial gain and mislead the public into believing that Castonguay and/or Overhead Door Company are officially licensed or authorized by Autoslide to distribute, offer, and sell the Autoslide products to the public, when such is not the case.

120. In creating the Webpage at https://www.shopautoslide.com/, and registering the Infringing Domain, Castonguay misappropriated the AUTOSLIDE Marks and mislead the public into believing that Castonguay and/or Overhead Door Company are officially licensed or authorized by Autoslide to distribute, offer, and sell the Autoslide products to the public, when such is not the case.

121. As a direct and proximate result that Castonguay's unlawful conduct, Plaintiffs are entitled to injunctive relief ordering the forfeiture or cancellation of the Webpage under 15 U.S.C. § 1125(d)(C), a transfer of the Infringing Domain to the Plaintiffs, and to recover all actual damages that Plaintiffs have sustained and will sustain, and all gains, profits, and advantages obtained by Castonguay as a result of his infringing acts in an amount not yet known, or an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just, and pursuant to 15 U.S.C. § 1117(d), together with

prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Mr. Castonguay and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT VI**
**Cybersquatting, 15 U.S.C. § 1125(d)**
**(Cyberdoor and Autoslide v. Mr. Castonguay and Smart Access)**

122. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

123. Defendants registered, trafficked in, or used the Infringing Domain.

124. Defendants acted in bad faith in creating the Revised Webpage, registering the Infringing Domain, and intended to profit directly by misappropriating and utilizing the AUTOSLIDE Marks on the Revised Webpage for the benefit of Defendant Castonguay, Defendant Smart Access, and/or both.

125. Defendants created the Revised Webpage, registered the Infringing Domain, and misappropriated the AUTOSLIDE Marks with the intention of diverting Autoslide's customers away from Autoslide and to Smart Access.

126. Defendants did not have permission or license from Autoslide or Cyberdoor to use AUTOSLIDE Marks on the Revised Webpage or register the

Infringing Domain, and Defendants utilization of the AUTOSLIDE Marks was not fair use of the marks or in connection with a bona fide and legitimate offering of goods or services.

127. In creating the Revised Webpage https://www.shopautoslide.com Defendants seized and linked to the underlying Autoslide website, https://autoslide.com/, for their own commercial gain and mislead the public into believing Defendants own Autoslide and possess legal authority to redesign Autoslide's products and distribute, offer, and sell them to the public, when such is not the case.

128. In creating the Revised Webpage at https://www.shopautoslide.com Defendants misappropriated the AUTOSLIDE Marks and mislead the public into believing that Defendants own Defendants own Autoslide and possess legal authority to redesign Autoslide's products and distribute, offer, and sell them to the public, when such is not the case.

129. In creating the Revised Webpage at https://www.shopautoslide.com, misappropriated the AUTOSLIDE Marks and AUTOSLIDE tradename and misled the public into believing that it could contact Autoslide or an Autoslide representative at Castonguay and/or Smart Access' email address at info@shopautoslide.com, when such is not the case.

130. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to injunctive relief ordering the forfeiture or cancellation of the Revised Webpage under 15 U.S.C. § 1125(d)(C), a transfer of the Infringing Domain, and to recover all actual damages that Plaintiffs have sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts in an amount not yet known, or an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just, and pursuant to 15 U.S.C. § 1117(d), together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a), plus treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b).

131. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Castonguay.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT VII**
**False Advertisement, Fla. Stat. § 817.41**
**(Cyberdoor and Autoslide v. Mr. Castonguay)**

132. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

133. As alleged herein, Castonguay's unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE tradename were willful and intended to mislead the public into believing that Castonguay and/or Overhead Door Company possess the legal authority to distribute, market, and sell Autoslide's products when Castonguay and/or Overhead Door Company possesses no such legal authority.

134. Autoslide's current or prospective customers/clients are likely to have relied on Castonguay's misrepresentations on the Webpage and purchased (or attempted to purchase) Autoslide's products through the Webpage or by contacting Castonguay and/or Overhead Door Company.

135. Autoslide's current or prospective customers/clients are likely to have relied on the AUTOSLIDE Marks and AUTOSLIDE tradename to purchase (or attempt to purchase) Autoslide's products through the Webpage or by contacting Castonguay and/or Overhead Door Company.

136. In creating the Webpage and utilizing the AUTOSLIDE Marks and AUTOSLIDE Tradename, Castonguay disseminated a misleading advertisement to

the public and caused Autoslide LLC and Autoslide to suffer actual damages in the form of lost profits and sales and Plaintiffs to sustain legal harm to the value of the AUTOSLIDE Marks and AUTOSLIDE Tradename.

137. Plaintiffs reserve the right to file a motion to amend this Complaint to include a claim for punitive damages under Fla. Stat. § 817.41 and Fla. Stat. §768.72 because Castonguay's misconduct and wrongdoing was egregious, intentional, and done with evil motive, whereby Castonguay had actual knowledge that his conduct was unlawful and would inflict injury on Plaintiffs and intentionally pursued that course of conduct despite such knowledge.

138. Alternatively, and in the event Fla. Stat. §768.72 does not apply, Plaintiffs request an award of punitive damages pursuant to Fla. Stat. § 817.41 for Castonguay's violation of unfair competition under the common law of Florida.

139. As a direct and proximate result of Castonguay's unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Castonguay from using the AUTOSLIDE Marks and AUTOSLIDE Tradename, together with actual damages, costs, and attorneys' fees pursuant to Fla. Stat. § 817.41.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT VIII**
**False Advertisement, Fla. Stat. § 817.41**
**(Cyberdoor and Autoslide v. Mr. Castonguay and Smart Access)**

140. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

141. As alleged herein, Defendants' unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE tradename were willful and intended to mislead the public into believing that Defendants own Autoslide and possess the legal authority to redesign Autoslide's products and distribute, market, and sell them to the public when Defendants possesses no such legal authority.

142. Autoslide's current or prospective customers/clients likely have relied on Castonguay's misrepresentations on the Webpage and purchased (or attempted to purchase) Autoslide's products through the Webpage or by contacting Castonguay and/or Overhead Door Company.

143. Autoslide's current or prospective customers/clients likely have relied on the AUTOSLIDE Marks and AUTOSLIDE tradename to purchase (or attempt to purchase) Autoslide's products through the Webpage or by contacting Castonguay and/or Overhead Door Company.

144. In creating the Webpage and utilizing the AUTOSLIDE Marks and AUTOSLIDE tradename, Castonguay disseminated a misleading advertisement to

the public and caused Autoslide LLC to suffer actual damages in the form of lost profits and sales and Cyberdoor to sustain legal harm to the value of the AUTOSLIDE Marks and AUTOSLIDE Tradename.

145. In creating the Revised Webpage and utilizing the AUTOSLIDE Marks and AUTOSLIDE Tradename, Defendants disseminated a misleading advertisement to the public and caused Autoslide LLC and Autoslide and to suffer actual damage in the form lost profits and sales and Plaintiffs to sustain legal harm to the value of their trademarks and tradename.

146. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Mr. Castonguay.

147. Plaintiffs reserve the right to file a motion to amend this Complaint to include a claim for punitive damages under Fla. Stat. § 817.41 and Fla. Stat. §768.72 because Defendants' misconduct and wrongdoing was egregious, intentional, and done with evil motive, whereby Defendants had actual knowledge that their conduct was unlawful and would inflict injury on Cyberdoor and Autoslide and intentionally pursued that course of conduct despite such knowledge.

148. Alternatively, and in the event Fla. Stat. §768.72 does not apply, Cyberdoor and Autoslide request an award of punitive damages pursuant to Fla. Stat.

§ 817.41 for Defendants' violation of unfair competition under the common law of Florida.

149. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the AUTOSLIDE Marks, AUTOSLIDE Tradename, and the Revised Webpage, together with actual damages, costs, and attorneys' fees pursuant to Fla. Stat. § 817.41.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IX**

**Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201**

**(Cyberdoor and Autoslide v. Mr. Castonguay)**

150. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

151. As alleged herein, Castonguay's unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE tradename were willful and intended to mislead the public into believing that Castonguay and/or Overhead Door Company possess the legal authority to

distribute, market, and sell Autoslide's products when Castonguay and/or Overhead Door Company possesses no such legal authority.

152. Castonguay's unauthorized use of the AUTOSLIDE Marks AUTOSLIDE Tradename in Florida's stream of commerce constitutes trademark infringement, false designation of origin, and cybersquatting and, thus, unfair competition in violation the FDUTPA.

153. Castonguay's misrepresentations and false advertisements with respect to the AUTOSLIDE Marks, AUTOSLIDE tradename, and Autoslide's products have likely induced or caused consumers to purchase (or attempt to purchase) Autoslide's products through Castonguay and/or Overhead Door Company.

154. As a direct and proximate result of Castonguay's unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Castonguay from using the AUTOSLIDE Marks and AUTOSLIDE Tradename, together with actual damages under Fla. Stat. § 501.207 and attorney's fees pursuant to Florida Statute § 501.2105.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Castonguay and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT X
## Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201
## (Cyberdoor and Autoslide v. Mr. Castonguay and Smart Access)

155. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

156. As alleged herein, Defendants' unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE Tradename were willful and intended to mislead the public into believing that Defendants own Autoslide and possess the legal authority to redesign Autoslide's products and distribute, market, and sell them to the public when Defendants possesses no such legal authority.

157. Defendants' unauthorized use of the AUTOSLIDE Marks and AUTOSLIDE Tradename in Florida's stream of commerce constitutes trademark infringement, tradename infringement, false designation of origin, cybersquatting, and trademark dilution and, thus, unfair competition in violation the FDUTPA.

158. Defendants' misrepresentations and false advertisements with respect to the AUTOSLIDE Marks, AUTOSLIDE tradename, and Autoslide's products have likely induced or caused consumers to purchase (or attempt to purchase) Autoslide's products through Smart Access.

159. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Mr. Castonguay.

160. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the AUTOSLIDE Marks, AUTOSLIDE Tradename, and the Revised Webpage together with actual damages under Fla. Stat. § 501.207 and attorney's fees pursuant to Florida Statute § 501.2105.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Plaintiffs all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT XI**
**Florida Common Law Unfair Competition**
**(Cyberdoor and Autoslide v. Mr. Castonguay)**

161. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

162. In creating the Webpage, Castonguay attempted to sale and, likely made arrangements to sale or actually effectuated sales of Autoslide's products without lawful permission or license by Autoslide and/or Cyberdoor and, therefore,

utilized the AUTOSLIDE Marks and AUTOSLIDE Tradename for his own business advantage.

163. As alleged herein, Castonguay's unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE tradename were willful and intended to mislead the public into believing that Mr. Castonguay and/or Overhead Door Company possess the legal authority to distribute, market, and sell Autoslide's products when Castonguay and/or Overhead Door Company possesses no such legal authority.

164. Castonguay is passing off Autoslide's products as his own.

165. Castonguay's misappropriation of the AUTOSLIDE Marks and AUTOSLIDE tradename constituted deceptive conduct and was solely intended to interfere with Autoslide's current and prospective customer relationships and lure those customers to himself and/or Overhead Door Company.

166. Castonguay's unauthorized use of the AUTOSLIDE Marks and AUTOSLIDE Tradename in Florida's stream of commerce constitutes trademark and tradename infringement, false designation of origin, cybersquatting, trademark dilution, and a violation of the FDUTPA and, thus, is actionable as common law unfair competition.

167. Cyberdoor and Autoslide reserve the right to file a motion to amend this Complaint to include a claim for punitive damages under Fla. Stat. §768.72 because

Mr. Castonguay's misconduct and wrongdoing was egregious, intentional, and done with evil motive, whereby Mr. Castonguay had actual knowledge that his conduct was unlawful and would inflict injury on Cyberdoor and Autoslide and intentionally pursued that course of conduct despite such knowledge.

168. Alternatively, and in the event Fla. Stat. §768.72 does not apply, Cyberdoor and Autoslide request an award of punitive damages for Mr. Castonguay's violation of unfair competition under the common law of Florida.

169. As a direct and proximate result of Castonguay's unlawful acts, Cyberdoor and Autoslide are entitled to injunctive relief prohibiting Castonguay from using the AUTOSLIDE Marks and AUTOSLIDE tradename, and the Webpage, and actual, compensatory and consequential damages, including, but not limited to, lost sales and profits, damage to business reputation, and loss of goodwill.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Castonguay and award Cyberdoor and Autoslide all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT XII**
**Florida Common Law Unfair Competition**
**(Cyberdoor and Autoslide v. Mr. Castonguay and Smart Access)**

170. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

171. In creating the Revised Webpage, Defendants attempted to sale and, likely have made arrangements to sale or actually effectuated sales of Autoslide's products without lawful permission or license by Autoslide LLC and, therefore, utilized the AUTOSLIDE Marks AUTOSLIDE Tradename for their own business advantage.

172. As alleged herein, Defendants' unlawful conduct and misrepresentations with respect to the AUTOSLIDE Marks and AUTOSLIDE tradename were willful and intended to mislead the public into believing that Defendants own Autoslide and possess the legal authority to redesign Autoslide's products and distribute, market, and sell them to the public when Defendants possesses no such legal authority.

173. Defendants are passing off Autoslide's products as their own.

174. Defendants' misappropriation of the AUTOSLIDE Marks and AUTOSLIDE Tradename constituted deceptive conduct and was solely intended to interfere with Autoslide's current and prospective customer relationships and lure those customers to Smart Access.

175. Defendants' unauthorized use of the AUTOSLIDE Marks and AUTOSLIDE tradename in Florida's stream of commerce constitutes trademark and tradename infringement, false designation of origin, cybersquatting, trademark

dilution, and a violation of the FDUTPA and, thus, is actionable as common law unfair competition.

176. Cyberdoor and Autoslide reserve the right to file a motion to amend this Complaint to include a claim for punitive damages under Fla. Stat. §768.72 because Defendants' misconduct and wrongdoing was egregious, intentional, and done with evil motive, whereby Defendants had actual knowledge that their conduct was unlawful and would inflict injury on Cyberdoor and Autoslide and intentionally pursued that course of conduct despite such knowledge.

177. Alternatively, and in the event Fla. Stat. §768.72 does not apply, Cyberdoor and Autoslide request an award of punitive damages for Defendants' violation of unfair competition under the common law of Florida.

178. Defendant Smart Access is vicariously liable for the acts and omissions of Defendant Castonguay and/or any individual acting under the control, supervision, or directives of Mr. Castonguay.

179. As a result of these wrongful acts, Cyberdoor and Autoslide are entitled to injunctive relief prohibiting Defendants from using the AUTOSLIDE Marks, AUTOSLIDE Tradename, and the Revised Webpage and actual, compensatory and consequential damages, including, but not limited to, lost sales and profits, damage to business reputation, and loss of goodwill.

WHEREFORE, Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants and award Cyberdoor and Autoslide all damages available as a matter of law and equity and as further set forth in the *ad damnum* clause of this Complaint, *infra*.

**PRAYER FOR RELIEF AND *AD DAMNUM CLAUSE***

WHEREFORE, Plaintiffs Cyberdoor and Autoslide request that this Court enter judgment in their favor and against Defendants Castonguay and/or Smart Access on all counts in this Complaint, individually and/or jointly, and award all damages available at law and equity, including, but not limited, to:

1. Temporary and permanent injunctions preventing and restraining Defendants' infringement of the AUTOSLIDE Marks and AUTOSLIDE Tradename under 15 U.S.C. § 1116;

2. A declaration ordering the forfeiture or cancellation of the Webpage and Revised Webpage under 15 U.S.C. § 1125(C),

3. An order for an accounting against Defendants for all profits received from the sale of Autoslide's products, directly or indirectly, in connection with, advertised, or promoted in any manner, by or through the use of the AUTOSLIDE Marks, the Webpage, the AUTOSLIDE Tradename, the Revised Webpage, and/or the Infringing Domain, and damages sustained by Plaintiffs on account of

Defendants' trademark infringement, unfair competition, false designation of origin, false advertising, deceptive and unfair trade practice, and cybersquatting;

4. An award for statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark under 15 U.S.C. § 1117(c)(1) or up to $2,000,000 for willful use of a counterfeit mark under 15 U.S.C. § 1117(c)(1);

5. An award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, pursuant to 15 U.S.C. § 1117(d);

6. An award for enhanced damages and profits, as well as reasonable attorney's fees as the prevailing party and the costs of this action, together with prejudgment and post-judgment interest pursuant to 15 U.S.C. § 1117(a);

7. A non-discretionary award for treble damages and attorney's fees in accordance with 15 U.S.C. § 1117(b);

8. An award for compensatory and consequential damages, including, but not limited to, actual damages, lost profits, commissions, and/or revenue and loss of goodwill;

9. An award for punitive damages in the event that Plaintiffs must file a motion to amend the Complaint and obtain leave of Court to add a claim for punitive damages under Fla. Stat. §768.72;

10. Alternatively, and otherwise, an award for punitive damages; and

11. For such other and further relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: November 3, 2026

Respectfully submitted,

By: /s/Michael J. Colitz, III

Michael J. Colitz, III
Lead Trial Counsel
Florida Bar No. 164348
GrayRobinson, P.A.,
101 E. Kennedy Blvd., Suite 4000
Tampa, FL 33602
Tel: 813-273-5298
Michael.colitz@gray-robinson.com
Sheila.fenimore@gray-robinson.com

Richard E. Mitchell
Florida Bar No. 168092
GrayRobinson, P.A.,
301 E Pine St., Suite 1400
Orlando, FL 32801-2741
Tel: 407-843-8400
rick.mitchell@gray-robinson.com

#69217852 v3